IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GAVIN BOLOSAN, #A1055979, ) | Civ. No. 18-00473 JMS-RLP |
| ) | |
| Plaintiff, ) | ORDER DISMISSING COMPLAINT |
| ) | IN PART AND DIRECTING |
| vs. ) | SERVICE |
| ) | |
| STATE OF HAWAII DEP'T OF ) | |
| PUBLIC SAFETY, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## ORDER DISMISSING COMPLAINT IN PART AND DIRECTING SERVICE

Before the court is pro se Plaintiff Gavin Bolosan's prisoner civil rights Complaint brought pursuant to 42 U.S.C. § 1983. Bolosan alleges claims against the Hawaii Department of Public Safety (DPS), Oahu Community Correctional Center (OCCC) Nurse Practitioner Courtney Tanigawa, and Adult Correctional Officer Sgt. K. Fonseca (collectively, Defendants). Bolosan alleges that Defendants violated the Eighth and Fourteenth Amendments when (1) Tanigawa deliberately neglected to review his DPS institutional medical records during his reentry examination at OCCC; and (2) Fonseca disregarded Bolosan's claim that he had a long-standing, documented, medical condition that made a top bunk unsafe for him. Compl., ECF No. 1, PageID #2. Bolosan claims that he fell and

injured himself on or about March 31, 2018, after Fonseca assigned him to a top bunk, due to Defendants' actions or inactions.

Bolosan states a plausible claim for relief against Defendants Tanigawa and Fonseca in their individual capacities under the Eighth or Fourteenth Amendment, and those claims are suitable for service. Tanigawa and Fonseca are required to file a response to Bolosan's claims after service is perfected. *See* 42 U.S.C. § 1997(e)(g)(2).

Bolosan fails to state a claim against the Hawaii Department of Public Safety and against Tanigawa and Fonseca in their official capacities and those claims are DISMISSED.

## I. **STATUTORY SCREENING**

The court must conduct a pre-Answer screening of all prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Watison*

v. *Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012). Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting this plausibility standard. *Id.* at 678-79; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed and all doubts should be resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *Lopez*, 203 F.3d at 1130, but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. BACKGROUND

Bolosan reentered OCCC on March 31, 2018, at 11:30 p.m., after nine months out of DPS custody. He says that Tanigawa conducted a perfunctory, five-minute reentry medical assessment examination, during which she only weighed

3

him and took his blood pressure. He claims that, although Tanigawa "knew of [his] medical history," she failed to review his institutional DPS medical records. Compl., ECF No. 1, PageID #2.[1] Bolosan alleges that these records contain a medical memorandum that prohibits his assignment to a top bunk indefinitely. He alleges that if Tanigawa had reviewed his medical records, she would have seen this memorandum and could have prevented his assignment to a top bunk.

Bolosan went to the housing unit after his medical assessment. He says that, although he "was medical[l]y assigned to the bottom bunk in cell #111," *id.*, PageID #7, Sgt. Fonseca "forced" him "to move to cell #110," *id.*, PageID #2.[2] A handicapped inmate with a wheelchair was already assigned to the bottom bunk in cell #110, leaving Bolosan the top bunk. Bolosan says that he told Fonseca that he had an indefinite medical memorandum for a lower bunk in his DPS medical files. Fonseca allegedly said, "he don't care about that," and threatened Bolosan with disciplinary action if he didn't accept the cell assignment. *Id.*, PageID #6-7. Bolosan says that he "blacked out" as he descended the ladder from the top bunk to use the restroom, fell, and seriously injured his back. *Id.*, PageID #7.

---

[1] Bolosan refers to Tanigawa as "they" in Count I, but he is clear that she is the nurse who conducted his reentry examination. *See* Compl., ECF No. 1, PageID #1-2, #5.

[2] Bolosan does not explain who assigned him to a bottom bunk in cell #111 or when this occurred.

Bolosan now experiences severe pain and has difficulty walking, bending, sitting, lifting, or climbing. He seeks $10 million in compensation for his medical expenses for the rest of his life and punitive damages.

### III. **DISCUSSION**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). A plaintiff must also allege that he suffered a specific injury as a result of a particular defendant's conduct and an affirmative link between the injury and the violation of his rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

### A. **Eleventh Amendment Immunity**

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007). Defendants named in their official capacities are subject to suit under § 1983 only "for prospective declaratory and injunctive relief . . . to enjoin an alleged ongoing violation of federal law." *Oyama v. Univ. of Haw.*, 2013 WL 1767710, at *7 (D.

5

Haw. Apr. 23, 2013) (quoting *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy Inc.*, 560 U.S. 413 (2010) ); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."); *Ex parte Young*, 209 U.S. 123 (1908).

Bolosan seeks damages only and does not allege an ongoing violation of state law. Moreover, the Hawaii Department of Public Safety is not a "person" within the meaning of § 1983. *See Will*, 491 U.S. at 71. Claims against the Department of Public Safety and Tanigawa and Fonseca in their official capacities are DISMISSED.

**B.      Inadequate Medical Care**

It is unclear whether Bolosan reentered OCCC as a pretrial detainee or as a convicted prisoner. It is therefore uncertain whether his deliberate indifference claims arise under the Eighth or the Fourteenth Amendment. Under either standard, Bolosan states plausible claims against Tanigawa and Fonseca.

*1.      Eighth Amendment*

If Bolosan reentered OCCC as a convicted prisoner, his claims arise under the Eighth Amendment, which protects convicted prisoners from inhumane

6

methods of punishment and conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The Eighth Amendment's prohibition on cruel and unusual punishment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1991) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a [state] actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). A plaintiff may show the "defendant's response to the need was deliberately indifferent . . . by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted).

Bolosan asserts that Tanigawa knew of his medical history and, nonetheless, failed to properly examine him or review his prison medical records. Had she

done so, he alleges that she could have prevented his assignment to a top bunk. Bolosan explicitly told Fonseca that he had a medical memorandum in his prison medical records that prohibited him from being assigned to a top bunk, yet Fonseca replied that he didn't care and forced Bolosan to accept a top bunk, allegedly resulting in his fall. Bolosan states a claim under the Eighth Amendment against Tanigawa and Fonseca and these claims shall be served and require a response.

### 2. *Fourteenth Amendment*

If Bolosan was a pretrial detainee when he reentered OCCC, his claims arise under the due process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). The elements of a pretrial detainee's medical care claims under the Fourteenth Amendment are: "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved — making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1125 (9th Cir.

2018) (citing *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc), *cert. denied*, 137 S. Ct. 831 (2017)).

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular case.'" *Castro*, 833 F.3d at 1071 (quoting *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (quotation omitted). A plaintiff must "prove more than negligence but less than subjective intent — something akin to reckless disregard." *Id.*

Under the facts asserted here, that Tanigawa was aware of Bolosan's medical condition (presumably from his previous incarceration at OCCC), yet failed to review his medical records or adequately assess his physical condition before releasing him to the housing unit, Bolosan raises a plausible inference that Tanigawa made an intentional decision that placed him at a substantial risk and failed to take objectively reasonable measures to abate the risk, leading to his injury.

Bolosan's allegations against Fonseca raise a plausible inference that Fonseca made an intentional decision to assign Bolosan to a top bunk, despite

9

knowledge that this would place Bolosan at substantial risk of harm, and took no measures to abate that risk.

## IV. SERVICE ORDER

IT IS HEREBY ORDERED:

(1) The Clerk of Court shall send the United States Marshal a copy of this Order, and a copy of the endorsed Complaint, ECF No. 1, and completed summonses for Defendants Courtney Tanigawa and Sgt. K. Fonseca. The United States Marshal shall retain these documents for use in the event that personal service is required for any Defendant.

(2) Per agreement with the Hawaii Department of Public Safety, the Clerk of Court shall provide by electronic means to **DPS liaisons Shelley Nobriga and Laurie Nadamoto**: (a) a copy of the Complaint, the present Order, and ONE COMPLETED NOTICE OF LAWSUIT AND REQUEST FOR WAIVER OF SERVICE OF SUMMONS form for **each** Defendant; and (b) TWO COMPLETED WAIVER OF SERVICE OF SUMMONS forms for each Defendant.

(3) Defendants shall have **30 days** after the requests are sent to **return the waivers to the United States Marshals Service, who shall file the waivers with the court**. Fed. R. Civ. P. 4(d)(1)(F). If Defendants fail to do so within that time, the United States Marshal SHALL effect personal service pursuant to Fed. R.

Civ. P. 4(e) and/or 4(j)(2). In the absence of good cause, a Defendant who fails to return a Waiver of Service of Summons will be required to pay the expenses of service in accordance with the provisions of Fed. R. Civ. P. 4(d)(2).

(4) Defendants shall file an answer or otherwise respond to Bolosan's Complaint **within 60** days after electronic service (if formal service is waived), or **45 days** if service is not waived. Failure to respond may result in entry of a default judgment.

(5) Bolosan shall promptly inform the court of any change of address by filing a "NOTICE OF CHANGE OF ADDRESS." The notice shall contain only information about the change of address and its effective date and shall not include requests for other relief. Failure to file such notice may result in the dismissal of the action for failure to prosecute under Fed. R. Civ. P. 41(b).

(6) After the Complaint is served and Defendants have filed a response or entered an appearance, Bolosan's documents are deemed served on Defendant(s) or their attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system. The United States Marshals Service is not responsible for serving documents after service of the operative pleading.

## V. CONCLUSION

(1) The Complaint is DISMISSED in part for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1). Specifically, claims against the Hawaii Department of Public Safety and Defendants Tanigawa and Fonseca in their official capacities are DISMISSED.

(2) Bolosan raises a plausible claim for relief under the Eighth or Fourteenth Amendment against Defendants Courtney Tanigawa and Sgt. K. Fonseca in their individual capacities and those claims SHALL be served as detailed above and require an Answer or other reply.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 31, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Bolosan v. Tanigawa, et al.*, No. 1:18 cv 00473 JMS RLP; Scrng '19 Bolosan18 486 jms #3 (st cl in prt 8 or 14 SVC Ord)